THE OHIO AND MISSISSIPPI RAILWAY CO. *v.* YOHE ET AL.

PLEADING.—*Common Carrier.* — *Ownership of Property.* — If a complaint against a common carrier, for failure to carry and deliver property, shows that the property was bought of the consignor by the plaintiff, that the consignor delivered it to the carrier, and that the carrier executed a bill of lading to the plaintiff, but failed to deliver the goods, it is sufficient.

COMMON CARRIER. —*Goods Taken by Legal Process.* — A common carrier is excused from liability for not carrying and delivering goods, when, without any act, fault or connivance on the part of the carrier, they are seized by virtue of legal process and taken out of his possession.

SAME.—*Duty of Carrier to Give Notice.*—When goods in possession of a common carrier are taken out of the possession of the carrier by legal process, he should give immediate notice to the parties interested.

From the Martin Circuit Court.

*W. H. DeWolf* and *H. P. Buxton,* for appellant.

*G. G. Reily* and *W. C. Johnson,* for appellees.

DOWNEY, J.—This was an action by appellees against the appellant as a common carrier. The action was commenced in Knox county, and the venue changed to Martin.

It is alleged in the complaint that the plaintiffs' consignors, on the 3d of November, 1873, delivered to the appellant, at Bridgeport, Illinois, a quantity of wheat, to be carried to Vincennes, Indiana, and delivered to the appellees. The appellant signed and delivered a bill of lading evidencing the contract, and this is the foundation of the action.

It is alleged that the company failed to deliver the wheat according to the contract, etc. A demurrer to the complaint was filed and overruled.

The defendant moved the court, on affidavit, to stay the action until the determination of an action of replevin in Illinois, involving the title and ownership of the property, brought by one Johnson. This motion having been over-ruled, the defendant asked that Johnson be made a party to the action, which request was also refused. Thereupon the defendant pleaded, in substance, that while the wheat was in a car of the company, at Bridgeport, awaiting the coming of a train and engine to transport it to Vincennes, in accordance with the bill of lading, without any act, fault or connivance of the defendant, or of any of her agents, ser-vants or employes, Johnson sued out of the office of the clerk of the circuit court of Lawrence county, Illinois, a writ of replevin, the said Johnson then and there claiming to be the owner and entitled to the possession of said wheat, and, by vir-tue of said writ, the sheriff of said county seized and took the same out of the possession of the defendant, and delivered the same to said Johnson, according to law and the command of said writ, and the said Johnson took possession thereof; that said action is yet pending, by reason whereof the defend-ant was prevented from transporting said wheat to said city of Vincennes and delivering the same to the plaintiffs. It is averred that said Lawrence Circuit Court had jurisdiction, and certified copies of the papers and process in the action of replevin, etc., are filed with the answer.

A demurrer to this answer, on the ground that it did not state facts sufficient to constitute a defence to the action, was filed by the plaintiffs and sustained by the court. The defendant declining to answer further, there was judgment for the plaintiffs.

It is objected to the complaint that it does not show that the plaintiffs own the wheat, or that they are the consignees mentioned in the bill of lading. There is no foundation for these objections. The complaint alleges that the plaintiffs purchased the wheat of the consignors; that the consignors delivered the same to the defendant; and that the defendant executed the bill of lading to the plaintiffs.

The Ohio and Mississippi Railway Co. *v.* Yohe *et al.*

It is further assigned as error, that the court improperly sustained the demurrer to the answer.

The question presented is this, is a common carrier of goods excused from liability for not carrying and delivering the goods, when they are, without any act, fault or connivance on his part, seized, by virtue of legal process, and taken out of his possession?

It is impossible for the carrier to deliver the goods to the consignee, when they have been seized by legal process and taken out of his possession. The carrier cannot stop, when goods are offered to him for carriage, to investigate the question as to their ownership. Nor do we think he is bound, when the goods are so taken out of his possession, to follow them up, and be at the trouble and expense of asserting the claim thereto of the party to or for whom he undertook to carry them. We do not think it material what the form of the process may be. In every case the carrier must yield to the authority of legal process.

After the seizure of the goods by the officer, by virtue of the process, they are in the custody of the law, and the carrier cannot comply with his contract without a resistance of the process and a violation of law.

The right of the sheriff to hold the goods involved questions which could only be determined by the tribunal which issued the process or some other competent tribunal, and the carrier had no power to decide them. If the goods were wrongfully seized, the plaintiffs have their remedy against the officer who seized them, or against the party at whose instance it was done. As between these parties, the process would be no justification, if the plaintiffs were the owners and entitled to the possession of the goods.

It makes no difference, we think, that the process was issued by a tribunal of a state different from that in which the plaintiffs reside. The rule must be the same as in a case where the process emanates from a court in the state of the plaintiff's residence.

It cannot be denied that the carrier must obey the laws of

the several states in which it follows its calling. The laws. of Illinois which give force and effect to a writ of replevin must be obeyed. It cannot say to the sheriff, who is armed with a writ issued in due form of law, commanding him to take the property, that it has executed a bill of lading, and thereby agreed to transport the property to another state, and therefore he cannot have it. The sheriff would have the right, and it would become his duty, to call out the power of the county to aid in serving his lawful process.

The carrier is deprived of the possession of the property by a superior power, the power of the state—the *vis major* of the civil law—and in all things as potent and overpowering, as far as the carrier is concerned, as if it were the "act of God or the public enemy." In fact, it amounts to the same thing; the carrier is equally powerless in the grasp of either.

In Redf. Railw., vol. 2, p. 158, the learned author says that it is settled that the bailee may defend against the claim of the bailor, by showing that the goods have been taken from him by legal process. And in a note he adds, "If this defence were not valid, it might compel the party to resist the acts of a public officer in the discharge of his duty, which the law will never do."

In New York, where property was forcibly seized by a constable, on a complaint that the property had been stolen, the court said, "But my associates, not passing upon the question whether the property was delivered to the true owners, desire to put this case upon the doctrine that the common carrier is exonerated from his obligation to his bailor, where the property of the latter is taken from him by due legal process, provided the bailor is promptly notified of such taking. * * * The judgment of the Supreme Court should therefore be affirmed. All affirm, on the ground that when the property is taken from the carrier by legal process, and he gives notice thereof, he is discharged." *Bliven* v. *Hudson River R. R. Co.*, 36 N. Y. 403.

In this same case, in the Supreme Court, it was held, that

"the bailee must assure himself, and show the court that the proceedings are regular and valid, but he is not bound to litigate for his bailor, or to show that the judgment or decision of the tribunal issuing the process, or seizing the goods, was correct in law or in fact. This is the rule as to bailees in general, and it includes the case of common carriers." *Bliven* v. *Hudson River R. R. Co.*, 35 Barb. 191.

In a case where goods were seized on attachment, the court held, "If goods are taken from a bailee or carrier by authority of law, in any case coming within these exceptions, there is no doubt that it is a good defence to an action by the bailor or shipper, for a non-delivery." *Van Winkle* v. *United States Mail Steamship Co.*, 37 Barb. 122.

In Vermont, where goods in the hands of a wharfinger were seized under legal process, the court held that if they are taken from the wharfinger or warehouseman by lawful process, the wharfinger or warehouseman can protect himself in a suit brought against him by the owner. *Burton* v. *Wilkinson*, 18 Vt. 186.

In the Supreme Court of the United States, where goods in the hands of a carrier had been attached by a third party, in a suit brought by the consignees on a bill of lading, Mr. Justice NELSON, in delivering the opinion of the court, said:

"After the seizure of the goods by the sheriff, under the attachment, they were in the custody of the law, and the defendant could not comply with the demand of the plaintiffs without a breach of it, even admitting the goods to have been, at the time, in his actual possession. The case, however, shows that they were in the possession of the sheriff's officer or agent, and continued there until disposed of under the judgment upon the attachment. It is true, that these goods had been delivered to the defendant, as carriers, by the plaintiffs, to be conveyed for them to the place of destination, and were seized under an attachment against third persons; but this circumstance did not impair the legal effect of the seizure or custody of the goods under it, so as to justify the defendant in taking them out of the hands of

the sheriff. The right of the sheriff to hold them was a question of law, to be determined by the proper legal proceedings, and not at the will of the defendant nor that of the plaintiffs. The law on this subject is well settled, as may be seen on a reference to the cases collected in sections 453, 290, 350, of Drake on Attachment, second edition." *Stiles* v. *Davis,* 1 Black; 101.

The above case is the same as the case at bar, with the single exception that in *Stiles* v. *Davis* the goods were seized under an attachment, while in this case they were seized under a writ of replevin.

There is a defect, however, in the answer, which justified the circuit court in holding it bad, and that is the want of an averment that the defendant gave immediate notice to the plaintiffs that the goods had been seized and taken out of its possession. That the carrier should do this, seems to be a necessary and reasonable qualification of the rule. The rule is laid down with this qualification in *Bliven* v. *The Hudson River R. R. Co., supra.* The only averment as to notice in the answer is this: "And the defendant further avers that said plaintiffs had notice before the commencement of this suit, that said action of replevin was pending," etc. The bill of lading bears date November 3d, 1873. The writ of replevin bears date November 5th, 1873. The wheat was taken and delivered to Johnson on the 6th day of November, 1873. The record does not show when this action was commenced. The first date given is that of the filing of the amended complaint, February 7th, 1874. There is nothing from which we can find that proper diligence was used by the carrier in giving notice of the seizure of the goods.

It may be repeated that the wheat was received by the defendant on the 3d day of November, 1873, and was not seized until the 6th. It is probable that a satisfactory excuse or reason should be alleged why the wheat was not moved before the seizure. The answer admits the receipt of the wheat and the execution of the bill of lading, on the 3d of November, and then alleges, "and thereupon said wheat

was loaded into a car of defendant then standing upon her side track, at said town of Bridgeport, and while said wheat was in said car, and so upon said track, and awaiting the arrival of a train and engine to transport the same to the city of Vincennes aforesaid, in accordance with the terms of said bill of lading, and without the act, fault or connivance of the defendants or of any of her agents, servants or employes, one Benjamin F. Johnson sued out," etc. It is very questionable whether this shows proper diligence on the part of the carrier. We need not, however, decide this question. Clearly, we think, the carrier cannot make use of the fact that the property has been seized by legal process to shield himself from liability for his own negligence, or to justify any improper confederation with the party or officer seizing the goods.

The rulings of the court on the motions to stay the proceedings in the action, and to cause Johnson to be made a party to the action, were proper, for the reasons stated in determining the validity of the answer.

A question is made concerning the publication of a deposition taken by the plaintiffs, which, it is contended, was not properly directed on the envelope. But as the deposition was not used on the trial, the defendant could not have been injured by this ruling.

The judgment below is affirmed, with costs.